IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**, a Connecticut corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>**SERVERLOGIC CORPORATION**, an Oregon corporation; **NORTHWEST TIRE FACTORY, LLC**, an Oregon limited liability company,<br><br>            Defendants. | Case No. 3:13-cv-2128-SI<br><br>**OPINION AND ORDER** |

Lloyd Bernstein, BULLIVANT HOUSER & BAILEY PC, 888 S.W. Fifth Avenue, Suite 300, Portland, OR 97204. Of Attorneys for Plaintiffs.

William E. Gaar and Jillian Pollock, BUCKLEY LAW PC, 5300 Meadows Road, Suite 200, Lake Oswego, OR 97035; Arthur S. Garrett, III, KELLER AND HECKMAN LLP, 1001 G Street NW, Suite 500 West, Washington, DC 20001. Of Attorneys for Defendant ServerLogic Corporation.

**Michael H. Simon, District Judge.**

Plaintiff, Travelers Property Casualty Company of America ("Travelers"), maintains this action against Defendants ServerLogic Corporation ("ServerLogic") and Northwest Tire Factory, LLC ("NWTF"). Travelers seeks a judgment declaring that Travelers is not obligated to

PAGE 1 – OPINION AND ORDER

indemnify ServerLogic for an underlying arbitration award granted in favor of NWTF against ServerLogic. Before the Court are Travelers' Motion for Summary Judgment (Dkt. 24) and ServerLogic's Cross Motion for Summary Judgment (Dkt. 26) on its counterclaim for breach of contract. For the reasons that follow, Travelers' motion is granted and ServerLogic's motion is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the]

PAGE 2 – OPINION AND ORDER

same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

This is a case about two competing interpretations of an insurance policy. ServerLogic argues that the policy requires Travelers to indemnify ServerLogic against an arbitration award issued against ServerLogic and in favor of co-defendant NWTF. Travelers argues that the Policy excludes coverage for all damages in the award.

**A. Professional Services Contract between ServerLogic and NWTF**

On January 22, 2009, NWTF and ServerLogic entered into a Professional Services Master Agreement ("PSMA") in which ServerLogic agreed to provide specific services set forth in a subsequent Statement of Work ("SOW"). In the PSMA and SOW, ServerLogic agreed to create a custom point-of-sale software system for NWTF. Under the terms of the SOW, the software system was to be ready for pilot implementation in NWTF stores by the end of September 2009 at a total cost to NWTF of $462,000 (the "Contract Price").

Over the next 18 months, NWTF and ServerLogic made multiple amendments to the scope of the SOW to correct deficiencies in the software system and to respond to NWTF's requests for modifications. In October 2010, NWTF informed ServerLogic that NWTF believed

PAGE 3 – OPINION AND ORDER

ServerLogic had breached the contract by failing to deliver a software system within the terms of the SOW. On October 15, 2010, the CEOs of the two companies met to attempt to resolve the dispute, and subsequently entered into a Letter Agreement on December 13, 2010 ("the Letter Agreement"). The Letter Agreement modified the scope of the work to be performed by ServerLogic and required ServerLogic to correct identified defects in the software and make additional modifications requested by NWTF.

After NWTF's unsuccessful attempts to implement the software system over the next twelve months, on December 28, 2011, NWTF sent written notice to ServerLogic that its services were terminated. On May 25, 2012, NWTF initiated arbitration ("the Arbitration") against ServerLogic under section 18.5 of the PSMA by filing a Statement of Claim with the Arbitration Services of Portland. Travelers defended ServerLogic under a reservation of rights.

**B. Insurance Contract between Travelers and ServerLogic**

Travelers issued several forms of liability insurance to ServerLogic, effective December 1, 2009 to December 1, 2010. Under the policy's CyberFirst Technology Errors and Omissions Liability Coverage Form ("the Policy"), Traveler's agreed to "pay those sums that the insured must pay as 'damages' because of loss to which this insurance applies." Dkt. 25, Ex. A at 26. Section I, Subsection 1(b) of the Policy provides that "[t]his insurance applies to loss only if . . . [t]he loss arises out of 'your product' or 'your work' provided or performed for others. *Id.* Section II of the policy defines "damages" as either (a) "[s]ums any insured is legally obligated to pay as compensatory damages imposed by law"; or (b) "[s]ums any insured must pay as consequential damages." *Id.* at 29.

Additionally, the Policy contains certain exclusions. *Id.* at 27-29. Relevant to this case, Section I, Subsection 2(c) of the Policy ("the Warranty Exclusion") excludes the following:

Any cost or expense incurred by any insured or others:

PAGE 4 – OPINION AND ORDER

> (1) To comply with any warranty for "your product" or "your work";
>
> (2) To repair, replace, upgrade, supplement, or otherwise improve "your product" or "your work", or to perform or complete "your work";
>
> (3) For the recall, removal, or withdrawal of "your product" or "your work" from the market or from use by any person or organization for any reason; or
>
> (4) For the adjustment, inspection, or disposal of "your product" or "your work".
>
> Paragraphs (2), (3), and (4) of this exclusion do not apply to loss of use of "your product" or "your work."

*Id.* at 28.

### C. The Underlying Arbitration

In its Arbitration Statement of Claim, NWTF alleged that ServerLogic breached its contract with NWTF by not performing as agreed in the PSMA and SOW and that ServerLogic was negligent in failing to deliver a functional software system. NWTF claimed damages in the amount of $948,000. Additionally, NWTF demanded that ServerLogic pay NWTF's reasonable attorney fees and costs under Section 18.10 of the PSMA. NWTF and ServerLogic arbitrated the claim over nine days between August 28, 2013 and September 30, 2013. On October 4, 2013, the arbitration panel issued its Interim Award. Dkt. 26, Ex. B.

In the Interim Award, the arbitration panel stated that "[NWTF] seeks recovery of damages under both breach of contract and negligence for ServerLogic's failure to deliver a functional software system as promised." *Id.* at 4. The arbitration panel found that ServerLogic both breached the terms of its contract with NWTF and "was negligent in the performance of its professional responsibilities to [NWTF]." *Id.* at 8-9.

In the Arbitration, NWTF requested total damages in the amount of $1,542,136. *Id.* at 10. NWTF calculated its damages as follows: (a) the $762,646 paid by NWTF to ServerLogic (the Contract Price of $462,000 plus about $300,646 paid to ServerLogic for modifications and to

correct defects); (b) $173,608 paid by NWTF to a third party, D2i2 Consultants, for additional work; and (c) $600,881 as pre-judgment interest, calculated at an annual rate of 18 percent. *Id.*

The arbitration panel concluded, however, that "any award of damages in this case must take into consideration an offset based on some of [NWTF's] requested enhancements during the course of the project and [NWTF's] assumption of some project management responsibilities following the Letter Agreement." *Id.* First, the arbitration panel concluded that NWTF "must share some of the responsibility for the additional costs incurred over [and] above [the Contract Price] of $462,000 originally agreed upon." *Id.* Next, the arbitration panel "applied Section 11 of the PSMA, which precludes an award of damages in excess of the amounts [NWTF] actually paid to ServerLogic."[1] *Id.* Finally, the arbitration panel concluded that the limitation on the award of damages found in Section 11 of the PSMA applied to both a cause of action for breach of contract and for negligence. *Id.*

On November 19, 2013, the arbitration panel entered a Final Award, incorporating the Interim Award (together, "the Award"). The panel awarded NWTF $550,000 in damages, prejudgment interest of $86,932, additional pre-judgment interest at a rate of $136.62 per day from September 30, 2013 until November 19, 2013, and post-judgment interest at a rate of 9 percent per year. Dkt. 26, Ex. C. The panel held that "[t]he damages awarded are not cumulative but the same under either the breach of contract or negligence claim." *Id.* at 2. The panel also concluded that NWTF, as the prevailing party in the proceeding, was entitled to an award of attorney fees, expert witness fees, and costs under Section 18.10 of the PSMA in the amount of $285,000. *Id.* at 3.

---

[1] The arbitration panel did not specify how it applied Section 11 of the PSMA. The award of damages in the amount of $550,000 was presumably calculated as the Contract Price of $462,000 plus $88,000, the latter number presumably calculated as some portion of the additional $300,646 paid to ServerLogic for modifications and to correct defects.

PAGE 6 – OPINION AND ORDER

# DISCUSSION

## A. Law Governing Interpretation of Insurance Contracts

The interpretation of an insurance policy is a matter of law. *Emp'rs Ins. of Wausau, A Mut. Co. v. Tektronix, Inc.*, 211 Or. App. 485, 503 (2007). In interpreting an insurance policy, the court determines the intent of the parties based on the terms and conditions of the policy. *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 469 (1992). To make that determination, the court uses a three-step process. *Id.* First, if the terms of the policy are unambiguous, the analysis ends and the unambiguous terms control. *Id.* at 470. If there are multiple plausible interpretations of a term, however, the court next examines the term in light of the "particular context in which that term is used in the policy and the broader context of the policy as a whole." *Id.* Finally, if the term remains ambiguous in light of its context, then the term will be construed against the insurer. *Id.* The court determines plain meaning from the perspective of a reasonable insured. *Id.* at 469-70.

## B. Whether the Damages Awarded to NWTF "Arise Out of" ServerLogic's Product or Work

Section I, Subsection b(1) of the Policy provides that the insurance applies to a loss only if "[t]he loss arises out of 'your product' provided to others or 'your work' provided or performed for others." Dkt. 26, Ex 4 at 26. Travelers argues that the term "arises out of" in the Policy "requires a causal connection between [NWTF's] loss and some product or work ServerLogic provided to [NWTF]" and that the requisite causal connection does not exist here.

Travelers' argument proceeds by first categorizing the majority of damages awarded to NWTF in the Award as a "refund" of the Contract Price. NWTF's Statement of Claim requested, in part, "a refund of $758,722 paid to ServerLogic," which included both the Contract Price of

$462,000 and additional amounts paid to ServerLogic for defects and modifications.[2] Next, Travelers argues that the Contract Price of $462,000 was paid by NWTF to ServerLogic as "consideration or motivation for ServerLogic to provide software" and was therefore "antecedent to, not a result of, ServerLogic's work and product." Following this reasoning, Travelers maintains that a "refund" of the Contract Price cannot "arise out of" ServerLogic's work or product and therefore that portion of the award is not covered by the Policy.

Insurance policies often employ such language as "arising out of" and "resulting from" when describing the coverage provided by an insurance policy. 7 Couch on Ins. § 101:52. These phrases are frequently given a broader and more comprehensive meaning than that encompassed by "proximate cause" and are generally considered to mean "flowing from" or "having its origin in." *Id.* Oregon courts have frequently addressed the phrase in the context of automobile insurance policies. *See Oakridge Cmty. Ambulance Serv., Inc. v. U. S. Fid. & Guar. Co.*, 278 Or. 21 (1977); *Atlanta Cas. Co. v. Orr*, 141 Or. App. 441, 444 (1996); *Jordan by Jordan v. Lee*, 76 Or. App. 472 (1985); *see also Artisan & Truckers Cas. Co. v. John Zaccar Cranley Nw. Pilot Car Serv.*, 2014 WL 29350, at *6 (D. Or. Jan. 3, 2014) (discussing Oregon cases).

The only support provided by Travelers for its argument is *Oakridge*, in which the Oregon Supreme Court adopted the generally accepted rule for interpreting the phrase "arising out of the ownership, maintenance or use of the owned automobile." 278 Or. at 24-25. According to the court in *Oakridge*, the words "arising out of" have a broader meaning than that usually attached to the words "caused by." *Id.* at 25. Interpreting *Oakridge*, the Oregon Court of Appeals has held that, for there to be coverage under such a provision, the ownership, maintenance, or use of a vehicle need not be the direct or legal cause of an injury. *Jordan*, 76 Or. App. at 475. The

---

[2] As explained in more detail above, the Award reduced the $758,722 requested by NWTF to $550,000.

injury, however, cannot be unrelated to the use of the vehicle. The injury "must originate from, be incident to or have a connection with the use of the vehicle." *Id.*

Applying the Oregon courts' analysis to the phrase "arising out of" in the present insurance contract, the Court finds that the loss at issue, at the very least, has a connection to ServerLogic's product or work as required under the Policy. Moreover, even if the term were ambiguous, any ambiguity is construed in favor of the insured. *Blohm v. Glens Falls Ins. Co.*, 231 Or. 410, 416 (1962). Accordingly, Travelers cannot conclusively demonstrate that the damages awarded to NWTF in the Award did not "arise out of" ServerLogic's product or work within the meaning of the Policy.

## C. Whether the Damages Awarded to NWTF Are "Compensatory Damages" Within the Meaning of the Policy

The Policy expressly defines "damages" as either "compensatory damages" or "consequential damages." Dkt. 26, Ex. 4 at 29. Travelers argues that the damages awarded to NWTF in the Award cannot properly be characterized as consequential damages because the arbitration panel applied the damage limitation provisions of the PSMA, which specifically preclude liability for consequential damages. Moreover, Travelers argues that, because neither NWTF's Statement of Claim or the Award make any reference to consequential damages, the relevant inquiry is whether the damages awarded to NWTF are appropriately characterized as compensatory damages or some other form of relief. The Court agrees with this analysis.[3]

Travelers next argues that the damages awarded to NWTF are not compensatory damages within the meaning of the Policy because any "refund" of the Contract Price to NWTF must be

---

[3] In its response to Travelers' Motion for Summary Judgment, ServerLogic concedes that the PSMA precludes liability for consequential damages, but asserts that the damages awarded to NWTF in the Award may still be reasonably characterized as consequential damages. In its reply in support of its own Motion for Summary Judgment, however, ServerLogic argues that the damages awarded to NWTF may *only* be characterized as compensatory damages.

PAGE 9 – OPINION AND ORDER

characterized as restitution and that restitution as a remedy is distinct from compensatory damages. Although the Court agrees that consequential damages are not at issue here, Travelers' claim that the damages awarded to NWTF are a refund and thus "restitution" rather than compensatory damages is conceptually flawed.

The flaw in Travelers' argument arises from Travelers conflating two different meanings of "restitution." The Restatement (Third) of Restitution explains that:

> It is an accepted part of American contract law that there are remedies for breach called "restitution," but the multiple connotations of the word "restitution" are such that "restitution for breach of contract" can refer to a number of different things entirely. The difficulty has been compounded by the conflicting uses of the word "restitution" in the two Restatements of Contracts. The original Restatement of Contracts used the word "restitution" to describe both the remedy that lawyers had always called "rescission" and the entirely different remedy that consists of damages measured by the value of the plaintiff's performance.

Restatement (Third) of Restitution and Unjust Enrichment II, Intro. Note (2011). The Restatement goes on to explain that restitution as a remedy for a performing party with no contract claim ("unjust enrichment") is distinct from the alternative remedy for breach of contract ("rescission and restitution"). *Id. See also* Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex. L. Rev. 1277, 1279 (1989) ("Lawyers use the word 'restitution' in at least two senses. 'Restitution' means recovery based on and measured by unjust enrichment. It also means restoration in-kind of a specific thing."). Plaintiff, in fact, cites cases discussing "restitution" in both the context of rescission of a contract and unjust enrichment without ever distinguishing between the two or explaining which legal concept it is referring to in its argument.

The Court need not, however, untangle this issue because Travelers' characterization of the Award as a "refund," and thus "restitution," is without merit. Although NWTF's Statement

PAGE 10 – OPINION AND ORDER

of Claim does refer to a "refund," the term as used in the Statement of Claim simply refers to NWTF's own measure of its damages, under both breach of contract and negligence theories, as all money paid to ServerLogic. Dkt. 26, Ex. 2 at 1. Travelers' characterization of the Award as "restitution" is thus inapt, as the Award itself makes no reference to restitution of any kind. The arbitration panel, in explaining its award of damages, identified the amount of damages requested by NWTF, and reduced that amount for multiple and separate reasons. Dkt. 26, Ex. 2 at 10-11. First, the arbitration panel concluded that "any award of damages in this case must take into consideration an offset based on some of [NWTF's] requested enhancements during the course of the project and [NWTF's] assumption of some project management responsibilities following the Letter Agreement." *Id.* at 10. Second, the arbitration panel held that NWTF "must share some of the responsibility for the additional costs incurred over [and] above the $462,000 originally agreed upon amount." *Id.* Third, the arbitration panel "applied Section 11 of the PSMA, which precludes an award of damages in excess of the amounts [NWTF] actually paid to ServerLogic." *Id.* Finally, the arbitration panel determined that the limitation on the award of damages found in Section 11 of the PSMA applied to both "a tort action and to a breach of contract action." *Id.* Nowhere in its discussion of damages does the Award characterize the damages awarded to NWTF as being in any way related to restitution. Accordingly, the damages at issue are appropriately characterized as compensatory damages within the meaning of the Policy, rather than what Travelers refers to as "restitution."

**D. Whether the Warranty Exclusion Precludes Coverage of the Damages Awarded to NWTF**

Travelers argues that the Warranty Exclusion (Section I, Subsection 2(c) of the Policy) excludes all of the damages awarded to NWTF in the underlying arbitration. The Warranty Exclusion excludes from coverage under the Policy:

PAGE 11 – OPINION AND ORDER

>   Any cost or expense incurred by any insured or others:
>
>   (1) To comply with any warranty for "your product" or "your work";
>
>   (2) To repair, replace, upgrade, supplement, or otherwise improve "your product" or "your work", *or to perform* or complete "*your work*";
>
>   (3) For the recall, removal, or withdrawal of "your product" or "your work" from the market or from use by any person or organization for any reason; or
>
>   (4) For the adjustment, inspection, or disposal of "your product" or "your work".
>
>   Paragraphs (2), (3), and (4) of this exclusion do not apply to loss of use of "your product" or "your work."

Dkt. 25, Ex. A at 28 (emphasis added). Travelers asserts that the damages at issue in this case fall into three categories: (a) the Contract Price of $462,000, which Travelers characterizes as a "refund"; (b) an additional $88,000 awarded to NWTF, which Travelers characterizes as a "partial refund" of the additional $300,646 paid to ServerLogic over the Contract Price; and (c) additional amounts paid to D2i2, a third-party consultant. According to Travelers, there are no other damages at issue and each category of damages is excluded under the Policy's Warranty Exclusion. ServerLogic concedes that the Warranty Exclusion applies to amounts paid to the D2i2, the third-party consultant, but argues that it does not apply to either the Contract Price or any additional amount paid by NWTF directly to ServerLogic.

Travelers' argument rests on paragraph (2) of the Warranty Exclusion. Travelers argues that the second clause of paragraph (2) (excluding "any cost or expense" incurred "to perform or complete 'your work'") excludes all damages awarded by the arbitration panel to Plaintiff in the Award because the Contract Price was paid to ServerLogic solely for the purpose of creating working software for NWTF and ServerLogic did not, in fact, provide working software to NWTF, according to the arbitration panel. Similarly, Travelers argues that the first clause of paragraph (2) (excluding "any cost or expense" to repair, replace, upgrade, supplement, or

PAGE 12 – OPINION AND ORDER

otherwise improve "your product") applies to all damages paid to NWTF above the Contract Price. These additional amounts, Travelers maintains, were a result of various requests for correction of software defects, enhancements, and change orders that modified the scope of ServerLogic's work. Specifically, there was no claim by NWTF and no finding by the arbitration panel that ServerLogic's work caused financial harm to NWTF other than the amounts it had to pay for ServerLogic's work or to repair or complete ServerLogic's work.

The plain meaning of the text of the Warranty Exclusion and the underlying facts of this case unambiguously show that the Warranty Exclusion applies to all of the damages awarded to NWTF. NWTF paid ServerLogic to create a custom point-of-sale software system that would be ready for pilot implementation in NWTF stores by the end of September 2009. NWTF claimed that the software was defective, and ServerLogic was unable to correct those defects despite additional amounts paid to ServerLogic and a third-party for this purpose. In short, ServerLogic failed to perform or complete its work and was therefore required to pay compensatory damages to NWTF as a result.

That the intent of the parties was to exclude these types of damages is also clear from the broader context of the Policy. In addition to paragraph (2), paragraphs (1), (3), and (4) of the Warranty Exclusion more generally exclude costs related to defects in an insured's own work or products. For example, paragraph (1) excludes damages related to compliance with warranties; paragraph (3) excludes coverage for the "recall, removal, or withdrawal" of an insured's products; and paragraph (4) excludes coverage for the "adjustment, inspection, and disposal of an insured's own work or products. Similarly, other exclusions found in Subsection 2 of the Policy also demonstrate an intent to exclude coverage for costs related to an insured's own conduct. For example, Subsection 2(b) excludes coverage for any "cost guarantee or probable

cost estimate being exceeded" or any "cost overrun." Section I, Subsection 2(e) excludes coverage for any failure "to deliver 'your product'" or to "begin 'your work' as required by contract or agreement. Subsection 2(f) excludes coverage for wrongful acts that the insured had knowledge of before the Policy was purchased.

ServerLogic contends, however, that while the above analysis may apply to the breach of contract portion of the Award, it does not apply to the portion of the Award finding that ServerLogic was also negligent in the performance of its work. In the Award, the arbitration panel specifically held that "the breach of contract damages and negligence damages are duplicative and not cumulative." Dkt. 26, Ex 3 at 2. Therefore, ServerLogic argues, because the arbitration panel held that ServerLogic owed a duty to NWTF that was "separate from and in addition to" ServerLogic's contractual duties, the warranty exclusion does not apply to any damages for ServerLogic's negligence.

This argument is unpersuasive and the Court finds no basis for ServerLogic's claim that the underlying theory of liability in the Award determines whether the Warranty Exclusion applies. To the contrary, the Warranty Exclusion expressly states that it applies to "[a]ny cost or expense incurred by any insured or others." Dkt. 25, Ex. A at 28. The plain meaning of the phrase "any cost or expense" suggests that the exclusion applies regardless of the underlying theory of liability. While ServerLogic attempts to characterize the damages for negligence as somehow distinct from those granted for breach of contract, the only damages sought by NWTF in the underlying arbitration were for ServerLogic's failure to "perform or complete" ServerLogic's work.[4] Thus, regardless of the underlying theory of liability, ServerLogic paid damages to NWTF because ServerLogic did not perform the services it had promised to provide

---

[4] As stated above, there was no claim by NWTF for any other financial damage supposedly caused by ServerLogic's work.

PAGE 14 – OPINION AND ORDER

to NWTF. Damages for this failure to perform fall squarely within paragraph (2) of the Warranty Exclusion. Accordingly, Travelers is not obligated to indemnify ServerLogic for any of the damages in the Award.

### E.  Attorney Fees and Costs

The Supplementary Payments section of the Policy provides that Travelers must pay for "costs taxed against the insured" and for pre-judgment and post-judgment interest with respect to "that part of the judgment we pay." Dkt 25, Ex A at 11. Because the Court finds that all of the damages in the Award are excluded by the Warranty Exclusion, and therefore that Travelers is not obligated to indemnify ServerLogic for any portion of the Award, Travelers also is not obligated to pay for any interest or attorney fees under the Supplementary Payments section of the Policy.

## CONCLUSION

Travelers' Motion for Summary Judgment (Dkt. 24) is GRANTED. ServerLogic's Motion for Summary Judgment (Dkt. 26) is DENIED. This case is DISMISSED.

**IT IS SO ORDERED**.

DATED this 3rd day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge